UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

_____
                                        )
JOHN DOE,                               )
                                        )
        Plaintiff,                      )
                                        )     Case No.:  22-CV-1007
        v.                              )
                                        )
WASHINGTON UNIVERSITY in ST.            )
LOUIS,                                  )
                                        )
        Defendant.                      )
                                        )
_____)

## COMPLAINT AT LAW

Plaintiff, John Doe, by and through his undersigned attorneys, files this Complaint against Defendant, Washington University in St. Louis ("University"), and in support thereof, alleges as follows:

1.      This is an action for declaratory relief and monetary damages arising out of Defendant's wrongful refusal to honor its contract with Plaintiff for a degree upon his payment of the required tuition dues, compliance with Defendant's policies and procedures, and successful completion of the requirements for an undergraduate degree.

2.      Despite otherwise meeting the University's criteria for graduation, Defendant has ignored requests to issue Plaintiff his college diploma, thereby preventing him from attending a top American law school where he was accepted.

1

THE PARTIES

3.      Plaintiff, John Doe, is, and was a resident of Cook County, Illinois for all relevant

events described herein.  During some of the events described herein, Plaintiff was

enrolled as a full time, tuition-paying, undergraduate student at Washington University.

4.      Defendant Washington University is a private university primarily located in

Missouri, with a principal address of One Brookings Dr., St. Louis, Missouri, 63130.

JURISDICTION AND VENUE

5.      The parties to this action are citizens of different states.

6.      The amount in controversy exceeds $75,000.  Defendant previously removed a

related case filed in the Circuit Court of Cook County, Illinois to the District Court of the

Northern District of Illinois by alleging this case's value exceeds $75,000.

7.      Based on the diversity of citizenship and the amount in controversy, pursuant to

28 U.S. Code § 1332, this Honorable Court has original jurisdiction over this matter.

8.      Venue is proper in the United States District Court for the Eastern District of

Missouri because a substantial part of the events or omissions giving rise to Plaintiff's

cause of action occurred in St. Louis, Missouri, and Defendant's main campus is in St.

Louis, Missouri.

FACTS COMMON TO ALL COUNTS

9.      In exchange for Plaintiff's tuition and agreement to abide by the Defendant's

University Student Conduct Code ("USCC") while completing the Degree Requirements,

Defendant promised Plaintiff the right to a degree/diploma and promised him a fair

disciplinary procedure prior to imposing sanctions under the USCC.

10.     Plaintiff intended to use his degree to attend law school at Northwestern, and Defendant was aware of his intent to pursue post-graduate school since it gave him a letter of reference required for his application to Northwestern.

11.     Defendant's website states "There are no boundaries to what you can achieve with a degree from Arts & Sciences," which evidences Plaintiff's belief was reasonable that he was not only going to school for education, but also for a degree that would enable him to pursue post-graduate education and jobs that required a college degree.  *See* Washington University of St. Louis, College of Arts & Sciences – About, https://artsci.wustl.edu/about (last visited October 18, 2021).

12.     Plaintiff promised to pay the required tuition and agreed to Defendant's terms, as recited on Defendant's website under the title Undergraduate Degree Requirements, which states as follows

> [T]o graduate from Washington University with a degree from the College of Arts and Sciences, you must complete a total of 120 units, at least 90 of which must be in Arts & Sciences coursework and 30 of which must be at the 300/400/500 level[1].

13.     After completing three years of full-time coursework, Plaintiff was on track to graduate in the Spring of 2018 with a double major in English and Economics, plus a minor in Writing.  Defendant's current requirements for English and Economics majors and minors are substantially identical to those agreed to by Plaintiff in May 2014[2].

14.     Prior to enrolling in courses for the Fall 2017 semester, Plaintiff met with his Washington University guidance counselor who promised his proposed schedule for

---

[1] See **EXHIBIT A** –Undergraduate Degree Requirements – Washington University website, https://artsci.wustl.edu/resources/undergraduate-degree-requirements.
[2] *See* **EXHIBIT B** – Economics Major & Minor Requirements, and **EXHIBIT C** – English Major Requirements.

3

Senior year would enable him to graduate with a degree if he passed all the courses he planned on enrolling in over his final two semesters.

15.     After passing his Spring 2018 finals and receiving his grades from Defendant, Plaintiff had obtained 126 cumulative units of credit from Defendant, at least 90 of which were in Arts & Sciences and 30 of which were at the 300/400/500 level, and completed all other requirements listed in Exhibit A.  Over his four years of undergraduate studies at Defendant, Plaintiff maintained a cumulative GPA of 3.82, and satisfied all the requirements for a degree contained in Exhibits A, B, and C.

16.     Plaintiff's GPA, high LSAT score, and his letter of recommendation from Washington University, enabled Plaintiff to get accepted in Northwestern's law school where he planned to begin law school in the Fall of 2018, pending receipt of his degree.

17.     In order to receive credit in courses required for a degree, Defendant required students to comply with its academic-integrity policy.

18.     Plaintiff complied with Defendant's academic-integrity policy and has never been accused of violations of the academic-integrity policy.

19.     In order to remain eligible to take courses required for his degree, Defendant required Plaintiff to comply with Defendant's University Student Conduct Code.  *See* **EXHIBIT D** – University Student Conduct Code ("USCC").

20.     In Section I(D) of the USCC, Defendant promised Plaintiff that "disciplinary proceedings conducted pursuant to the Code shall be informal, fair, and expeditious."

21.     As stated above, Defendant unconditionally promised Plaintiff that he would not be sanctioned for alleged conduct code violations absent a fair disciplinary proceeding.

22.     Prior to August 2020, when Defendant was compelled to change its Title IX hearing procedure to provide due process and comply with the U.S. Department of Education's final regulations regarding required procedures for proceedings under Title IX (34 CFR § 106.45), Defendant used the attached University Sexual Assault Investigation Board ("USAIB") Procedures to investigate all complaints against students involving sexual offenses listed in the USCC.  *See* **<u>EXHIBIT E</u>** – USAIB Procedures.

23.     Except for Sections V (USCC Procedures) and VII (Appeals) of the USCC, which Defendant's USAIB Procedures said were inapplicable to complaints handled by the University's Title IX Office (TIXO), the other sections from the USCC, including the fairness guarantee in Section I(D), applied to all disciplinary proceedings on alleged conduct code violations.

24.     Although Defendant knew or should have known its USAIB Procedures failed to provide students with sufficient due process protections to guarantee fairness and impartiality, in Paragraph 2 of Exhibit E, Defendant promised Plaintiff its USAIB Procedures were designed to provide an "equitable investigation and resolution of such referred complaints."

25.     Plaintiff's continued enrollment at Defendant for four years relied on Defendant's promise to give him a fair hearing and equitable resolution of any alleged conduct code violations prior to imposing sanctions related to a conviction of an offense listed in the USCC.

26.     Defendant is a private university and contends none of its employees are state actors, so the procedural due process privileges secured by the Fourteenth Amendment are inapplicable to protect Plaintiff from an unjust expulsion by a private actor.

27.     However, Defendant's promises to give Plaintiff a fair disciplinary hearing and equitable resolution amounts to a promise to provide Plaintiff with procedural due process prior to entering disciplinary sanctions for conduct code violations.

28.     While Defendant did inform Plaintiff that expulsion was a possible sanction for violating the USCC, Defendant never told Plaintiff that it would not give him a degree if he was convicted for violating the USCC after Defendant voluntarily released the grades confirming he had already acquired enough credits to satisfy the Degree Requirements listed in Exhibit A.

29.     Neither the Degree Requirements nor the USCC state that a student will not receive a degree if he is convicted for violating the USCC after he has already satisfied the Degree Requirements with academic integrity.

30.     On the night of April 6, 2018, Jane Roe arranged to meet Plaintiff at his home for a date via a dating app, Tindr, after her boyfriend broke up with her.  Jane arrived sober at around 11:00 p.m., then at her request, Plaintiff made her a drink, and they later engaged in what Plaintiff reasonably believed, because Jane both physically and verbally consented, were consensual sexual activities. When Jane got home the following day, she texted her friends to apologize for being late to brunch and stated her encounter with Plaintiff was "totally consensual and I don't regret it!"

31.     Despite telling her friends that her encounter with Plaintiff was totally consensual, Jane met with her ex-boyfriend that evening and told him she could not recall details due to being intoxicated. Jane's ex-boyfriend convinced her that her fuzzy memory was evidence that Jane, who up until that point considered the encounter consensual, was sexually assaulted.  Jane, still unsure, only decided to file a Title IX complaint after

someone else falsely told Jane that Plaintiff sexually assaulted other women, as an act of female solidarity during the #MeToo movement.

32.     Upon receipt of the Title IX complaint and without conducting any investigation into the truth of the complaint, Defendant placed a no-contact order with Jane on Plaintiff for the duration of the investigation into her complaint.  Defendant informed Plaintiff that a violation of this order would be considered an additional offense under the USCC.  In addition to expulsion, Defendant's sanction extended this no-contact order indefinitely.

33.     After presenting the no-contact order, Defendant also denied Plaintiff access to school property and ordered him to relocate to alternate housing, suggesting he complete his degree requirements online.  Plaintiff appealed the removal.  After the appeal was denied, on April 20, 2018, the Dean of Students rescinded the alternative housing offer and ordered Plaintiff to immediately vacate his pre-paid suite in "The Lofts" on Delmar without providing him with any equitable substitute housing.

34.     Despite no legal obligation to comply with Defendant's illegal eviction and no-contact order, which prohibited Plaintiff from exercising his First Amendment rights, Plaintiff complied with Defendant's requests because he believed both parties were contractually bound by the USCC and USAIB Procedures.

35.     On April 20, 2018, Plaintiff drove back to his residence in Chicago where he completed his final semester coursework, satisfying the Degree Requirements.

36.     Defendant voluntarily released Plaintiff's grades during their investigation and prior to any conviction, which confirmed Plaintiff satisfied the Degree Requirements.

37.     On April 26, 2018, less than a week after Plaintiff left campus and before investigating Jane's complaint, Defendant provided Jane a forum to share her version of

events uncontested to the entirety of campus, including those responsible for adjudicating her Complaint.  Jane also used the forum to call for the termination of the current Title IX Coordinator for failing to convict more accused students and demanded Defendant expel Plaintiff.  This forum was an on-campus protest named "Title Mine" that was covered by local media outlets and reported about in major local newspapers.

38.     Three days before the protest, Defendant's Provost emailed a letter to all faculty encouraging Title Mine attendance and asked them to excuse the absences of students who left class to attend.  *See* **EXHIBIT F**.  Provost Holden Thorp's letter stated he was "taking [his] class to the rally so we can all show [Jane and additional speakers] support. For [him], personally, it will be an important opportunity to listen and learn."

39.     Although he had previously expressed his bias for Jane and against Plaintiff, on Jan. 4, 2019, Provost Thorp denied Plaintiff's appeal and upheld his expulsion.

40.     Before the Title Mine protest, several women with whom Plaintiff had a prior relationship told him they were willing to testify in his defense.  Plaintiff knew Defendant's USCC rejected adverse character witness testimony, but thought beneficial character witness testimony might be helpful or, at worst, deemed irrelevant.  After the protest, Defendant's campus climate held such bias against Plaintiff that the threat of physical, psychological, and social harm to these women outweighed the benefit Plaintiff believed he would have derived from character witness testimony on his behalf.

41.     Defendant's investigation into Jane's complaint revealed Jane and Plaintiff were the only witnesses to the events at issue, and in brief summary, Jane maintained that she could not recall much, admitted she was never unconscious, but concluded she must have been incapacitated at the time of the intercourse.  Plaintiff maintained that, during the

8

relevant time periods, Jane was always coherent, cognizant, consenting, requesting consent, and he had no reason to believe she was ever incapacitated.

42.     During her interview, Jane's panel let her read off written statements and responses to the Panel's interview questions.  Defendant did not inform Plaintiff that it had granted Jane this benefit and did not offer the same benefit to Plaintiff.  Had Defendant offered Plaintiff the opportunity to prepare notes, written statements, and responses for his interview, he would have done so.

43.     As character evidence against Plaintiff, Jane provided her Panel with Plaintiff's application for an on-campus club leadership position written in an exaggerated jocular tone for comedic effect.  She also shared secondhand anecdotes about Plaintiff, some of which were exaggeration, others outright fabrications.  She provided the Panel with this testimony to demonstrate "what kind of a man [Plaintiff] is."

44.     Plaintiff prepared for his interview with the reasonable belief that the Panel would not ask him to respond to character witness testimony, as Defendant's USCC promises a "fair" hearing, and prohibits adverse character witness testimony "like Complainant's prior sexual history."  As Defendant considered promiscuous behavior irrelevant character witness testimony, Plaintiff saw no reason why a Panel would consider even less relevant behavior, like a jocular tone or exaggerated stories, relevant.

45.     Despite the promise of a fair hearing without adverse character witness testimony, Plaintiff's Panel repeatedly asked Plaintiff about the exaggerated anecdotes and jocular caricature.  All but one of the questions related to the on-campus club and Plaintiff's behavior that did not involve Jane or the night in question, had no probative benefit and no potential for an exculpatory response.

9

46. In response to a relevant question, both Plaintiff and Jane denied interacting fully sober in-person before the night in question. Plaintiff and Jane also agreed that at one event, where both were intoxicated, Jane expressed interest in Plaintiff. In its decision, the Panel rejected testimony from both involved parties without any evidence to the contrary to conclude they "must have" interacted during other events. The Panel used this conclusion to decide Plaintiff "must have" known the difference in Jane's behavior when drunk versus sober, therefore he "must have" known Jane was too drunk to consent.

47. Prior to convicting Plaintiff, Defendant did not give Plaintiff a hearing, let alone a fair hearing, as promised by Section 1(D) of the USCC. Defendant did not accept undisputed matters of material fact between Plaintiff and Jane, did not challenge contradictory witness testimony, did not let Plaintiff challenge contradictory witness testimony or submit questions for Defendant's decision makers to ask witnesses or his accuser, did not provide him with impartial decision makers since they were biased by their attendance at the Title Mine protest and the Op-Ed Jane published in StudLife, the Wash U school newspaper, did not conduct a fair and impartial investigation, and did not provide him with an equitable resolution of Jane's complaint.

48. Despite numerous requests for the official transcripts required by Plaintiff to enroll at Northwestern's law school, Defendant refused to provide Plaintiff with his official transcripts until late January 2020 after the deadline for him to enroll at Northwestern.

49. When Defendant finally provided Plaintiff with his official transcripts, there was no notation of his degree, which has prevented Plaintiff from attending any law school and has prevented him from obtaining a job that requires a college degree.

50.     As of the date of the filing of this Complaint, Defendant has failed to provide Plaintiff with his undergraduate degree.  That failure forced Northwestern Law to rescind their admission and prevented Defendant from pursuing a lucrative job at a prestigious consulting firm.

### COUNT 1 – BREACH OF CONTRACT (FAILURE TO PROVIDE DEGREE)

51.     Plaintiff restates and re-alleges the allegations contained above as if fully incorporated and alleged herein.

52.     At all relevant times, and pleading in the alternative to promissory estoppel, an express or implied contractual relationship was formed between Defendant and Plaintiff, whereby Plaintiff was required to pay his tuition, fees and other charges in exchange for the right to attend college courses and obtain an undergraduate degree from Defendant upon completion of the 120 units necessary to obtain a diploma.

53.     Throughout his four years at Washington University, Defendant never required Plaintiff to agree to any modifications or alterations of the unambiguous contract which provided Plaintiff a right to a degree and a diploma upon completion of 120 units, payment of the required fees, and compliance with the academic integrity policy.

54.     Defendant drafted its Undergraduate Degree Requirements, academic integrity policy, USCC, and USAIB Procedures and failed to include any terms that allow it to withhold a student's degree and diploma if all academic requirements were met with academic integrity and all required tuition payments were made.

55.     Defendant's Degree Requirements were drafted to inform students of their right to obtain a degree only after they fulfill Defendant's requirements for a degree.  If students

failed to meet the Degree Requirements, or failed to comply with the academic integrity requirements, they would not receive a degree.

56.     When Plaintiff accepted Defendant's offer of admission, he relied on Defendant's Degree Requirements and reasonably believed that absent his failure to meet the explicit conditions for a degree, Defendant would not have a limitless right to arbitrarily refuse to issue his degree.

57.     Plaintiff knew the Degree Requirements necessarily included the tuition requirement and academic integrity requirement, as students must pay tuition before registering for classes and must comply with the academic integrity requirements.

58.     Should Defendant expel a student for misconduct before he or she finishes the required courses, or sanction a student with a failed course and expulsion for violating the academic integrity policy, neither would be entitled to a degree as neither hypothetical student would have satisfied Defendant's Degree Requirements.

59.     In contrast to Paragraph 58, per the Degree Requirements and USCC, a student expelled after fulfilling all academic requirements and receiving all relevant grades is still entitled to receive a degree and diploma.

60.     Defendant drafted the Degree Requirements, so any perceived ambiguities must not prevent Plaintiff from pleading a breach of contract, but should be strictly construed against Defendant in a manner that does not strip Plaintiff of his reasonable expectation to receive a degree upon completion of the Degree Requirements.

61.     In the alternative of pleading an express contract, an implied contract was formed when Defendant accepted Plaintiff for enrollment, Plaintiff paid the required tuition, and

signed up for the courses required to meet the Degree Requirements.  The relevant terms

of the contract are contained in **EXHIBIT A** and Defendant's academic integrity policy.

62.     Every semester between Fall 2014 and Spring 2018, the parties agreed that when

Defendant released Plaintiff's passing grades after Plaintiff completed the required

courses, Defendant would allow him to graduate and would award him a degree.  These

promises were material to Plaintiff's decision to continue his enrollment at Defendant for

eight semesters.

63.     While Missouri courts have found against plaintiffs arguing the existence of a

contract with a university based on a promise that was aspirational in nature, when a

university's promise was specific, even if it was not specifically promised on a university

website (as it is on Defendant's website), the Eastern District of Missouri has found

students can sufficiently plead a breach of contract.  *See Martin v. Lindenwood Univ.*,

No. 4:20-CV-1128 RLW, 2021 WL 3077665 (E.D. Mo. July 21, 2021).  Just like a

university promises to provide on campus education, Defendant promised Plaintiff a

degree once he satisfied the Degree Requirements.


## COUNT II – BREACH OF CONTRACT (FAILURE TO PROVIDE FAIR DISCIPLINARY PROCEDURE AND EQUITABLE RESOLUTION)

64.     Plaintiff restates and re-alleges the allegations contained above as if fully

incorporated and alleged herein.

65.     In addition to pleading an express contract promising a degree upon completion of

the Degree Requirements, Defendant also breached its written contractual obligation to

provide all students investigated through its USAIB Process with a fair disciplinary

procedure, an impartial investigation and an equitable resolution.

66.     Every semester between Fall 2014 and Spring 2018, Defendant published its USCC which promised Plaintiff a fair disciplinary procedure if he was accused of any violations of the USCC.

67.     Since the USCC and USAIB procedures did not define fair or equitable, Plaintiff believed Defendant would provide him with protections equivalent to due process prior to determining his responsibility for allegations that could result in his expulsion.

68.     Plaintiff reasonably relied upon these promises that he could only be sanctioned for alleged violations of the USCC after a fair process and equitable outcome.

69.     At the onset of the Defendant's investigation, Plaintiff complied with the no-contact order (forcing Plaintiff to abandon the potential for an amicable resolution via dialogue with Jane) and agreed to vacate his suite without reimbursement, as he reasonably believed he would face further sanctions only after a "thorough, reliable and impartial investigation," a fair disciplinary procedure and an equitable resolution as promised in the USCC and USAIB Procedures.

70.     Defendant breached its promises to provide a fair disciplinary procedure, an impartial investigation and equitable resolution for Jane's Title IX complaint against Plaintiff for the following reasons:

    (a)     Failed to provide Plaintiff with an impartial investigation;

    (b)     Forbid Plaintiff and his attorney from access to the testimony of his accuser and her witnesses prior to finding against him;

    (c)     Failed to allow Plaintiff, or his attorney, to confront, cross-examine, or submit questions for the panelists to ask his accuser and her witnesses;

    (d)     Trained panelists (decision makers) using "trauma training" materials focused on addressing the needs and rights of the "victim," which presume the accused is guilty, accepts the victim's account as true,

and improperly shifts the burden of proof on the accused to prove his innocence;

(e)     Failed to screen Title IX decision makers for bias against Plaintiff, which was especially unfair since shortly after she filed her complaint, Jane wrote an inflammatory op-ed in the student newspaper and spoke about this case at an on-campus protest, during which Jane accused Defendant of failing to protect female students from Plaintiff, thereby causing the decision makers in Plaintiff's case to become biased against him from false statements about Plaintiff that they read in the defaming Op-ed and heard at the on-campus protest;

(f)     Encouraged the panelists to consider false allegations of prior bad acts and character evidence, without providing any procedural safeguards, prior to deciding Plaintiff's guilt for the alleged violation;

(g)     Employed a procedure that was intended to increase the probability of an erroneous conviction in a case that revolved on the credibility of the parties;

(h)     Failed to give Plaintiff any realistic appeal options (*e.g.* that the decision was arbitrary, the hearing was not fair, or the decision was against the manifest weight of the evidence) to prevent erroneous decisions from becoming final;

(i)     Encouraged the decision makers to accept prejudicial victim impact statements from all of Jane's witnesses before deciding guilt, did not ask Plaintiff about the accusation's impact on his life, and failed to provide any safeguards against the risk that such evidence would result in an emotional decision based on passion for the accuser and prejudice against the accused;

(j)     Failed to adequately inform Plaintiff of the evidence against him before the decision was issued, thereby preventing him from planning an adequate defense;

(k)     Failed to allow plaintiff to raise objections to or strike inflammatory and irrelevant evidence;

(l)     Forbid Plaintiff's attorney from participating in any meaningful manner, thereby depriving Plaintiff of his right to receive competent legal representation;

(m)     Lowered the burden of proof to a preponderance standard without providing any of the procedural safeguards (*e.g.* discovery, cross-

15

examination, closing arguments) that are required in civil cases with a
similar burden of proof in order to ensure fundamental fairness;

(n)     Failed to include a presumption that the accused is not responsible
for the alleged conduct until a determination regarding responsibility is
made at the conclusion of the grievance process;

(o)     Failed to hold its Panel responsible for lying and fabricating
witness testimony, and failed to provide a mechanism for Plaintiff to do
so; and

(p) Let the administrator responsible for adjudicating appeals (Provost
Holden Thorp) encourage attendance for all Defendant's students and
faculty, and attend an inflammatory rally where Jane told her story,
uncontested and unsubstantiated, before evaluating the investigative
report, Plaintiff's testimony, or the panel's decision.  *See* Exhibit F.

71.     Based on the wording used by Defendant in its USCC and USAIB Procedures,

Plaintiff reasonably believed Defendant promised Plaintiff a fair and impartial procedure

to resolve alleged conduct code violations.

72.     Unlike *Lucero v. Curators of Univ. of Missouri*, 400 S.W. 3d 390 (Mo. App.

W.D. 2015), Defendant's promise of a fair disciplinary procedure and impartial

investigation was not "aspirational in nature," it was an explicit promise regarding its

conduct throughout the hearing process.

73.     When Defendant chose to use the words "*shall* be informal, fair, and expeditious"

[Exhibit D – Section 1(D)] in the USCC, and "*will* conduct a thorough, reliable, and

impartial investigation of complaints" (Exhibit E – Page 3, ¶3) in its USAIB Procedures,

Defendant affirmed its intent to be contractually bound to such promises.

74.     Although Missouri courts have not yet considered a breach of contract action

based on a university's failure to provide a fair and impartial disciplinary hearing, courts

around the nation have consistently affirmed a student's contractual right to fair treatment

prior to sanctions for alleged Title IX offenses. *See Doe v. Univ. of the Sciences*, 961 F.3d 203 (3rd Cir. 2020).

75.     Defendant's breach of contract is directly attributable to the absence of necessary due process protections that were lacking during their investigation into Jane's complaint and decision to find against Plaintiff.

76.     The allegations against Plaintiff hinged on Jane's credibility, so without a hearing and without allowing Plaintiff to cross-examine his accuser and her witnesses, or even be aware of the specifics of the testimonials while a dispute about the accuracy of the testimony was relevant, the charges went unexamined in a meaningful way.

77.     As Plaintiff's credibility relied on impartial adjudication, the panel training materials and Defendant's decision to provide Jane with a forum Plaintiff could not speak at, and was forbidden from attending, unfairly predisposed adjudicators against Plaintiff by allowing them to consider "evidence" not generated during USAIB Procedures.

78.     Had  Plaintiff received the due process protections of legal representation, cross-examination, presumption of innocence, an impartial investigation, and impartial decision makers, Plaintiff would have shown that Jane remembered considerably more than the biased Panel claimed, demonstrated that Jane altered her story after learning memory loss alone was not definite evidence of an offense, successfully countered false allegations from other witnesses that the biased Panel used as further evidence of his guilt, and been exonerated.

79.     Absent the above, had Defendant offered Plaintiff the right to appeal on the merits and prejudicial bias, Plaintiff would have successfully appealed on the grounds that the biased Panel fabricated damning testimony, believed speculative testimony from

witnesses without personal knowledge of the accusation over undisputed matters of fact testified to by Jane and Plaintiff, let Jane prepare and reference written statements while Plaintiff had to anticipate the questions asked and respond to the best of his immediate ability, and ignored exculpatory evidence, in order to find against him.

80.    By not employing due process protections that would guarantee a fair disciplinary process and an equitable resolution, by instituting USAIB Procedures that failed to compensate for lost due process protections, and by exploiting the lost protections substantially and exclusively in ways that resulted in a finding against Plaintiff, Defendant failed to honor its promise of imposing sanctions only after a fair procedure and impartial investigation.

81.    Plaintiff fully performed all his duties required in the contract with Defendant to obtain his degree/diploma, but Defendant is denying Plaintiff's benefit of the bargain, the right to a fair disciplinary process prior to being sanctioned, and his right to a degree from Defendant.

82.    Apart from breaching its express contractual obligations, Defendant breached and violated the covenant of good faith and fair dealing implied in its contract with Plaintiff by acting arbitrarily, capriciously, and in bad faith by expelling Plaintiff without a fair disciplinary procedure and equitable resolution on Jane's Title IX compliant.

83.    In addition, Defendant violated the covenant of good faith and fair dealing when it decided not to give Plaintiff a degree, even though withholding a degree was not a possible sanction listed in the USCC for a conduct code violation, thereby depriving him of the benefit of his four years of hard work during which he compiled 126 units and satisfied Defendant's IQ curriculum with academic integrity.

84.     As a direct, proximate, and foreseeable consequence of Defendant's material breaches, Plaintiff lost his acceptance to one of the most prestigious law schools in the country and could not pursue a lucrative job at a consulting firm that he otherwise would've been offered.

85.     Although Defendant promised Plaintiff there would be no boundaries for what he could achieve with a degree from Arts & Sciences, without a degree, Plaintiff cannot achieve the future prospects that he was promised.

86.     As a result of Defendant's wrongful breach of contract, Plaintiff has sustained significant foreseeable damages, including but not limited to, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and professional opportunities, loss of future career prospects, significant legal fees, and other direct and consequential damages.

87.     As a result of the foregoing, Plaintiff is entitled to his degree and diploma, and as a result of defendant's willful breach of contract, Plaintiff requests this Court order Defendant to provide Plaintiff with a degree, award him the foreseeable monetary damages caused by Defendant's refusal to confer upon Plaintiff his earned degree, and award Plaintiff any recoverable fees and costs allowed by the applicable laws.

<u>COUNT III – PROMISSORY ESTOPPEL</u>

88.     Plaintiff restates and re-alleges the allegations contained both above and below as if fully incorporated and alleged herein.

89.     In the event this Court finds the promises and representations Defendant made to Plaintiff regarding his right to a fair disciplinary procedure and equitable resolution of

19

alleged conduct code violations, and his right to obtain a degree upon completion of 120 units with academic integrity, is not a legally valid and enforceable contract, Plaintiff pleads in the alternative, a claim for equitable promissory estoppel.

90.     Defendant made unambiguous promises to Plaintiff, both before and during his tenure at Washington University, that any student would receive a degree after completing of the Degree Requirements with academic integrity.

91.     Defendant made unambiguous promises to Plaintiff, both before and during his college career at Washington University, that if he was accused of a violation of the USCC, he would not be sanctioned without a fair disciplinary procedure, an impartial investigation and equitable resolution.

92.     Plaintiff relied on such promises when he decided to enroll, and continued to enroll for eight semesters, at Washington University.

93.     Plaintiff's reliance was expected and foreseeable by Defendant, especially since Defendant knew Plaintiff was attempting to get into law school[3].

94.     Plaintiff has relied on Defendant's promises to his detriment as Defendant kept all the tuition money collected from Plaintiff, failed to provide him with a fair and equitable process that satisfied due process before expelling him for an alleged violation of the USCC, then breached its promise and wrongfully withheld his degree, thereby preventing Plaintiff from attending law school and/or from obtaining a job that requires a college degree.

95.     As a result of the foregoing, Plaintiff is entitled to have this Court enforce Defendant's promises and he respectfully requests this Court order Defendant to remove

---

[3] In the Fall of 2017, Defendant wrote Plaintiff a letter of recommendation that he required to be considered for admission to Northwestern School of Law.

the expelled notation from his transcript, order Defendant to put a notation of his degree on his transcript, and/or order Defendant to provide Plaintiff with a fair disciplinary procedure that provides Plaintiff with due process and an equitable resolution of Jane's Title IX complaint.

## COUNT IV – UNJUST ENRICHMENT

96.     Plaintiff restates and re-alleges the allegations contained both above and below as if fully incorporated and alleged herein.

97.     Plaintiff paid his tuition, enrolled in the required courses, and successfully completed the courses Defendant agreed would satisfy the requirements for a degree.

98.     Defendant accepted Plaintiff's tuition payments for four years, allowed him to complete the required credits for a degree, advertised "[T]here are no boundaries to what you can achieve with a degree from Arts & Sciences," then wrongfully withheld his degree and refused to refund his tuition payments after deciding not to give Plaintiff his degree and diploma.

99.     Defendant promised Plaintiff a degree once he paid for, and successfully completed, the required course credits while complying with the academic-integrity policy.

100.    Defendant has been unjustly enriched by an amount equal to all the monies collected from Plaintiff between 2014 and January 2019.

101.    Fundamental fairness requires Defendant to return all of Plaintiff's tuition for his four years at the University, including any financial aid paid to Defendant by a third party

on Plaintiff's behalf, so Plaintiff can afford any additional college courses that he must complete to obtain a college degree from a comparable university[4].

102.     As a result of Defendant's unjust enrichment, Plaintiff is entitled to recover monetary damages equal to his four years of tuition payments, plus prejudgment interest, and costs as may be recoverable at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court:

(a)      Declare that Washington University breached its contract(s) with Plaintiff;

(b)      Award Plaintiff compensatory damages in an amount that exceeds the jurisdictional limit, including without limitation, damages to physical well-being, physical harm, emotional and psychological damages, damages to reputation, past and future economic losses, loss of education and professional opportunities, loss of future career prospects, and other direct and consequential damages;

(c)      Award prejudgment interest;

(d)      Award all recoverable court costs necessarily incurred in prosecuting this lawsuit; and

(e)      Award such other further relief as this Court deems fair and just, including any required modifications to the Contract so Plaintiff is not unjustly denied his benefit of the bargain.

Respectfully Submitted By:

  /s/ John G. Covert
_____

---

[4] Although Plaintiff has completed the requirements for a degree at Washington University, comparable schools, like Northwestern, would still require Plaintiff to attend Northwestern for an additional four semesters before that school would give him an undergraduate degree.

JOHN G. COVERT – #6285969IL

LLORENS LAW GROUP, LTD.
Attorneys for Plaintiff
20 N. Clark St., 33rd Floor
Chicago, Illinois 60602
(312) 602-2747
j.covert@llorenslawgroup.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 23rd day of September, 2022, the foregoing was served via e-mail sent to Defendant's General Counsel and filed electronically to be served by operation of the CM/ECF system upon all counsel of record.

/s/ John G. Covert
John G. Covert