UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

LIAM LEFEBVRE,                              )
                                            )
        Plaintiff,                          )
                                            )
        vs.                                 )       Case No. 4:22-CV-01007-SRC
                                            )
WASHINGTON UNIVERSITY,                      )
                                            )
        Defendants.                         )

## Memorandum and Order

In his fourth attempt against Defendant Washington University, Plaintiff Liam Lefebvre once again alleges that Washington University failed to give him a degree he claims he earned and that the University did not use fair disciplinary procedures.  Lefebvre brings some of his previous claims that this Court dismissed without prejudice—breach of contract, promissory estoppel, unjust enrichment—and an additional breach-of-contract claim.  Doc. 31.  For the fourth time, Washington University seeks dismissal of Lefebvre's claims.  Doc. 8.  Lefebvre further moves to amend his complaint, relying on the same facts, to add allegations of fraudulent misrepresentation.  Doc. 33-1.  Washington University opposes this motion on futility grounds. Doc. 16.  The court grants Washington University's motion to dismiss, denies on futility grounds Lefebvre's motion for leave to amend, and dismisses this case with prejudice.

## I.     Factual background

For purposes of deciding the motion to dismiss and motion for leave to amend, the Court accepts as true the following facts that Lefebvre alleges in his complaint and his proposed amended complaint.  See *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Zutz v. Nelson*,

601 F.3d 842, 850–51 (8th Cir. 2010) (applying *Twombly* pleading standard to determine

whether proposed amended complaint stated a claim).

Lefebvre attended Washington University and was finishing his last semester during the

Spring of 2018.  Doc. 31 at ¶ 13.  He had plans of graduating that spring and beginning law

school at Northwestern University in the Fall of 2018.  *Id.* at ¶ 10.  Working towards this goal,

Lefebvre met with his Washington University counselor before enrolling for his final year,

passed his final exams, obtained the necessary units of credit, and paid all tuition fees to

Washington University.  *See id.* at ¶¶ 12, 14–15.  During this time, the university never accused

Lefebvre of violating the academic-integrity policy, *id.* at ¶ 18, which prohibits various forms of

academic misconduct—potentially resulting in expulsion, Undergraduate Student Academic

Integrity Policy, https://wustl.edu/about/compliance-policies/academic-policies/undergraduate-

student-academic-integrity-policy/ (last visited April 13, 2023).

Unfortunately for Lefebvre, things took a turn during April of his final semester.  Another

student filed a Title IX complaint against him, *id.* at ¶ 31, and the University imposed a no-

contact order prohibiting Lefebvre from contacting the complaining student, *id.* at ¶ 32.

Washington University also prohibited Lefebvre from staying in his student-housing apartment,

encouraging him to complete the semester remotely while the investigation commenced.  *Id.* at

¶ 33.  Lefebvre appealed the removal from student housing, but after the University denied the

appeal, *id.*, he chose to finish his semester remotely, *id.* at ¶ 35.

Meanwhile, sometime after the Spring of 2018 semester ended and Lefebvre completed

his courses, Washington University began investigating the student's Title IX complaint.  *Id.* at

¶¶ 37, 65–66.  Specifically, the University Student Conduct Code ("Conduct Code") provides

that "disciplinary proceedings conducted pursuant to the Code shall be informal, fair, and

2

expeditious," Doc. 31-4 at p. 4, and that "[p]rocedures governing criminal or civil courts, including formal rules of evidence, are not applicable," *Id.* at pp. 4–5.  Further, while the University Sexual Assault Investigation Board's ("the Board") procedures state that the Board "will conduct a thorough, reliable and impartial investigation of complaints," formal criminal or civil procedures "are not applicable to [Board] proceedings."  Doc. 31-5 at p. 3.  Lefebvre was aware of these requirements, as well as potential repercussions, such as expulsion.  Doc. 31 at ¶ 28.

During the proceedings relating to the student's complaint, Washington University interviewed the student, her witnesses, and Lefebvre.  Doc. 31 at ¶¶ 42, 45.  However, Washington University deprived Lefebvre of the specifics of the interviews and prevented him from cross-examining the student witnesses.  *Id.* at ¶ 76.  Lefebvre also complains that the University did not allow him to raise objections to evidence, and prevented other due-process protections.  *Id.* at ¶¶ 70, 78.  Perplexingly, Lefebvre complains that Washington University did not give him a hearing, *id.* at ¶ 47, while also complaining that these proceedings against him— i.e., the hearing—were unfair, *id.* at ¶¶ 41–47.

After the proceedings, Washington University expelled Lefebvre.  *Id.* at ¶ 39.  He then appealed his expulsion, and the University denied his appeal.  *Id.*  Washington University defines expulsion as "permanent removal from student status" and permanently notes this on a student's transcript.  Doc. 31-4 at p. 21.  Due to his expulsion, Washington University refused to provide Lefebvre with his official transcripts until 2020, Doc. 31 at ¶ 48, and did not include a notation of his degree, *id.* at ¶ 49.

## II.     Procedural background

The first round of proceedings in this case began in February of 2019 when, in *Doe I*,
Lefebvre sued Washington University for various federal and state-law claims relating to his
attendance at, and expulsion from, Washington University.  *See Doe v. Washington Univ.,* No.
4:19-cv-300-JMB, Doc. 1 (E.D. Mo. Feb. 22, 2019).  Judge Bodenhausen dismissed the federal
claims with prejudice and the state claims for lack of jurisdiction, declining to exercise
supplemental jurisdiction over the claims, *Doe I*, 434 F. Supp. 3d 735 (E.D. Mo. 2020).  On the
federal-law claims, Lefebvre promptly sought reconsideration, which Judge Bodenhausen
denied.  *Doe I*, No. 4:19-cv-300-JMB, 2020 WL 1308209 (E.D. Mo. Mar. 19, 2020).  Lefebvre
then sought reconsideration on the same claims, and Judge Bodenhausen again denied.  *Doe I*,
No. 4:19-cv-300-JMB, 2021 WL 322770, at *1 (E.D. Mo. Feb. 1, 2021).

Meanwhile, in *Doe II*, Lefebvre filed suit in Illinois state court raising different state-law
claims regarding Washington University's alleged failure to provide Lefebvre his degree.
*Lefebvre v. Washington Univ.*, No. 20-cv-4928, 2021 WL 197388, at *1 (N.D. Ill. Jan. 20, 2021).
These claims focused on his theory that completing the course requirements listed in Washington
University's Degree Requirements, Doc. 31-1, and paying the necessary tuition entitled him to a
degree. Washington University removed the case to federal court and, ultimately, moved the
court to dismiss for lack of personal jurisdiction, and the court granted the motion.  *Id.*

Then, in *Doe III*, Lefebvre again brought state-law claims in this Court, based on
diversity jurisdiction.  *Doe v. Washington University*, No. 4:21-cv-205-SRC, Doc. 1.    The Court
held that it had subject-matter jurisdiction but dismissed the claims without prejudice.  *Doe III*,
2021 WL 4504387 (E.D. Mo. Sept. 30, 2021).  Specifically, the Court held:  (1) that Lefebvre
could not allege a contract, and thus he could not allege breach of contract, *id.* at *6–8; (2) that

4

without a contractual promise, promissory estoppel did not apply, *id.* at *8; (3) that Lefebvre

paid tuition to receive instruction, not a degree, and thus no unjust enrichment occurred, *id.* at *9;

and (4) that Washington University had no legal duty of care, meaning no negligence claim

existed, *id.* at *10.

In his current claim, Lefebvre realleges the promissory-estoppel claim, the unjust-

enrichment claim, and the breach-of-contract claim regarding Washington University's denying

Lefebvre a degree after he completed the necessary courses. Doc. 31. Realizing this strategy on

its own was not working, he reasserts the breach-of-contract claim regarding the fairness of the

disciplinary procedures from his original attempt. *Id.* at ¶¶ 64–87; *see also Doe I*, No. 4:19-cv-

300-JMB, Doc. 1 at ¶¶ 317–338. Further, Lefebvre ultimately attempts to relitigate the Title IX

complaints, even though this Court dismissed the claim with prejudice and denied two motions

for reconsideration on the matter. Doc. 20 at pp. 13–20. Then, after briefing began—in

essentially his seventh attempt at presenting his case to a court—Lefebvre sought leave to amend

and add two fraudulent-misrepresentation claims. Doc. 33-1 at ¶¶ 103–26. These would-be

claims generally parallel his breach-of-contract claims—one regarding degree requirements, *id.*

at ¶¶ 103–18, and the other regarding the fair disciplinary procedures, *id.* at ¶¶ 119–26. Lefebvre

also seeks to add a prayer for the Court to order Washington University to confer a degree on

him and a prayer for punitive damages. *Id.* at p. 26.

Washington University moved to dismiss this case because Lefebvre did not cure his

previous deficiencies and that no contract regarding the degree requirements existed. Docs. 8, 9.

Further, Washington University opposes Lefebvre's motion for leave to amend. Doc. 16. It

claims that amendments fail for futility since Lefebvre fails to state a claim for fraudulent

misrepresentation because Washington University did not falsely represent its degree requirements or disciplinary procedures. *Id.*

## III.    Standard

### A.    Rule 12(b)(6)

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." The notice pleading standard of Rule 8(a)(2) of the Federal Rules of Civil Procedure requires the plaintiff to give "a short and plain statement showing that the pleader is entitled to relief . . . ." To meet this standard and to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). This requirement of facial plausibility means the factual content of the plaintiff's allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). The Court must grant all reasonable inferences in favor of the nonmoving party. *Lustgraaf v. Behrens*, 619 F.3d 867, 872–73 (8th Cir. 2010).

When ruling on a motion to dismiss, a court "must liberally construe a complaint in favor of the plaintiff . . . ." *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010). Threadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Although courts must accept all factual allegations as true, they are not bound to take as true a legal conclusion couched as a factual allegation. *Twombly*, 550 U.S. at 555 (citation omitted); *Iqbal*, 556 U.S. at 677–78.

B.      **Leave to Amend**

Rule 15(a) of the Federal Rules of Civil Procedure, which governs motions for leave to

amend pleadings, states that courts "should freely give leave [to amend] when justice so

requires."  Under Rule 15's liberal amendment policy, "[d]enial of leave to amend pleadings is

appropriate only in those limited circumstances in which undue delay, bad faith on the part of the

moving party, futility of the amendment, or unfair prejudice to the non-moving party can be

demonstrated."  *Hillesheim v. Myron's Cards & Gifts, Inc.*, 897 F.3d 953, 955 (8th Cir. 2018)

(quoting *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 995 (8th Cir. 2001)); *see also Popoalii v.*

*Corr. Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008) ("A court abuses its discretion when it

denies a motion to amend a complaint unless there exists undue delay, bad faith, repeated failure

to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving

party, or futility of the amendment.").

"An amendment is futile if the amended claim 'could not withstand a motion to dismiss

under Rule 12(b)(6).'"  *Hillesheim*, 897 F.3d at 955 (quoting *Silva v. Metropolitan Life Ins. Co.*,

762 F.3d 711, 719 (8th Cir. 2014)).  In other words, "[a]lthough ordinarily the decision of

whether to allow a plaintiff to amend the complaint is within the trial court's discretion, when a

court denies leave to amend on the ground of futility, it means that the court reached a legal

conclusion that the amended complaint could not withstand a Rule 12 motion . . . ."  *In re Senior*

*Cottages of Am.*, *LLC*, 482 F.3d 997, 1001 (8th Cir. 2007) (citing Fed. R. Civ. P. 12).

IV.     **Discussion**

A.      **Claim preclusion**

First, the Court clarifies that claim preclusion—specifically a bar against claim-

splitting—does not apply to these claims because no court has issued a final judgment on the

7

merits of the state-law claims.  Courts must apply the claim-preclusion law "that would be applied by state courts in the State in which the federal diversity court sits." *Semtek Intern. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001).  Missouri courts typically rely on the Restatement of Judgments, *Kesterson v. State Farm Fire & Cas. Co.*, 242 S.W.3d 712, 717 (Mo. 2008) (citing *Chesterfield Vill., Inc. v. City of Chesterfield*, 64 S.W.3d 315, 318 (Mo. 2002)), which only bars claim splitting on judgments that courts find "valid and final," Restatement (Second) of Judgments § 24(1).  Further, Missouri courts consistently hold that a "dismissal without prejudice is not a final judgment."  *City of Kansas City v. Ross*, 508 S.W.3d 189, 192 (Mo. Ct. App. 2017) (quoting *Hutcheson v. Elec. Data Access Techs., Inc.*, 327 S.W.3d 622, 625 (Mo. Ct. App. 2010).

Washington University argues that claim preclusion should prohibit Lefebvre from splitting the claims that he should have previously pleaded, even though this Court dismissed the other claims without prejudice.  Doc. 9 at pp. 8–9.  Lefebvre does not dispute that claim preclusion would apply, but he argues that his claims fall within an exception to claim preclusion.  Both parties rely on *Kesterson*, 242 S.W.3d at 717; Doc. 9 at pp. 8–9; Doc. 20 at p. 12.  But neither party acknowledges that in *Kesterson*, the court previously entered a final judgment on the merits for one claim while dismissing the other without prejudice.  Additionally, the *Kesterson* court held that claim preclusion did not bar the claim previously dismissed without prejudice.  *Id.* at 717.  Since the Court has yet to issue a final judgment regarding Lefebvre's state-law claims, it finds that the doctrines against claim splitting do not bar Lefebvre's claims.

### B.   Motion to dismiss

After the Court previously dismissed Lefebvre's third case for failure to state a claim, Lefebvre brings his fourth case on these facts.  *Doe III*, 2021 WL 4504387, at *10.  Under

Missouri law, "a dismissal without prejudice may be 'res judicata' of what the judgment actually decided." *Bachman v. Bachman*, 997 S.W.2d 23, 25 (Mo. Ct. App. 1999).   Direct Estoppel bars parties from repleading the same claim without additional facts, even when the court dismisses the claim without prejudice.  *Id.*; *see also Bentch v. Collins*, 28 S.W.3d 453, 456 (Mo. Ct. App. 2000).  Direct estoppel does not apply where a plaintiff includes "new factual allegations."  *Id.*

Here, Lefebvre brings the same claims for breach of contract concerning degree requirements, promissory estoppel, and unjust enrichment.  He attempts to cure his previous pleading deficiencies by adding various facts and a breach-of-contract claim concerning the fairness of his disciplinary proceedings.  The Court addresses each claim in light of the Court's previous holding in tandem with the newly pleaded facts.

### 1. Breach of contract

In *Doe III*, Lefebvre brought a claim for breach of contract regarding Washington University's degree requirements. No. 4:21-cv-205-SRC, Doc. 1 at ¶¶ 19–29.  The Court dismissed the claim.  *Doe III*, 2021 WL 4504387, at *10.  Lefebvre tries again by adding allegations that he did complete his degree requirements in good academic standing, as well as an additional breach-of-contract claim for failure to provide fair disciplinary procedures and an equitable resolution.  Doc. 1 at ¶¶ 51–87.

As this Court previously stated, "[t]o state a claim for breach of contract under Missouri Law, Lefebvre must allege facts that show:  (1) a contract existed; (2) his rights under the contract; (3) Washington University's obligations under the contract; (4) breach by Washington University; and (5) that he suffered damages as a result. Under Missouri law, a student's enrollment at a university does not create a contractual relationship. 'Rather, in order to assert a breach of contract claim against a university, a student plaintiff must point to an identifiable

contractual promise that the [university] failed to honor.'" *Doe III*, 2021 WL 4504387, at *5–6 (quoting *Lucero v. Curators of Univ. of Missouri*, 400 S.W.3d 1, 5 (Mo. Ct. App. 2013)).

### a.      Breach of contract for failure to confer degree

In *Doe III*, the Court held that Lefebvre could not show that the degree requirements created an "identifiable contractual promise from the University."  2021 WL 4504387, at *6. Further, the Court found "Lefebvre fail[ed] to include in his allegations anything related to how misconduct could prevent a Washington University student from graduating."  *Id.* at *7.  In his newest attempt, Lefebvre does not allege any identifiable contractual promise but claims that because Washington University did not affirmatively state it could withhold its degree for failure to comply with the Conduct Code, it created a promise to provide his degree.  Doc. 1 at ¶ 54; *see also* Doc. 20 at p. 7.  Lefebvre concedes that Washington University could expel him for noncompliance with the Conduct Code.  *Id.* at ¶ 57.  However, he reasons that "a student expelled after fulfilling all academic requirements and receiving all relevant grades is still entitled to receive a degree," *id.* at ¶ 59, even though someone expelled earlier would not receive a degree, *id.* at ¶ 58.  Lefebvre argues that Washington University, as a sophisticated party, should have written its degree requirements to clearly represent that it could withhold a degree for Conduct Code violations.

First, Lefebvre argues that he had a "reasonable expectation" he would receive a degree, relying only on a case applying Massachusetts law to support its reasonable-expectation theory. Doc. 20 at pp. 6–7 (citing *Sonoiki v. Harvard Univ.*, 37 F.4th 691, 704 (1st Cir. 2022)).  Lefebvre ignores that the *Sonoiki* case applied Massachusetts law, and that the parties there conceded that a contract existed between the university and the student.  *Id.* at 703.  Thus, the *Sonoiki* court never analyzed whether a mere reasonable expectation of performance justified a contract, only

that it helped explain the limits of a breach.  Under Missouri law, a reasonable expectation alone does not justify a contract.  *See Lucero*, 400 S.W.3d at 5.

Next, Lefebvre does not point to any new facts concerning degree requirements, but points to one case, decided before *Doe III*, where this Court found a contractual relationship between a university and a student.  *Martin v. Lindenwood Univ.*, No. 4:20-cv-1128-RLW, 2021 WL 3077665 at *5–6 (E.D. Mo. July 21, 2021). In *Martin*, the Court held that the plaintiff plausibly alleged a contract with a university for in-person education, focusing on the fact that on-line classes cost less, and plaintiff paid for the full-semester tuition at the in-person price.  *Id.* The *Martin* court found that plaintiff "sufficiently allege[s] specific contractual promises made to in-person students[.]"  *Id.* at *6.  Here, Lefebvre fails to allege such specific contractual promises.

Further, on two separate instances since *Martin*, this Court has reaffirmed that Missouri law does not recognize a contract based on a student's enrollment at a university without an identifiable contractual promise.  *Doe v. Washington Univ.*, No.4:21-cv-95-HEA, 2022 WL 424901, at *4 (E.D. Mo. Feb. 11, 2022); *Raimo v. Washington Univ.*, No. 4:20-cv-634-SEP, 2022 WL 796239, at *9–12 (E.D. Mo. Mar. 16, 2022); *see also Hughes v. Mo. Baptist Univ.*, 4:19-cv-2373-AGF, 2021 WL 2042264, at *13 (E.D. Mo. May 21, 2021).   Since Lefebvre fails to add any identifiable contractual promise that compliance with the degree requirements and academic-integrity policy alone constitutes a right to a degree, he cannot plausibly allege a contract existed.

Finally, even if the Court held that the degree requirements could create a contract with Lefebvre, Washington University did not breach because it expelled him after finding he violated the Conduct Code.  Doc. 31 at ¶ 32.  Lefebvre argues that expulsion does not prevent a degree

when the school officially expels a student after graduation and completion of the degree requirements.  This theory would allow, even encourage, Conduct Code violations at the end of a student's tenure, because Washington University would lack deterrence for such violations. Lefebvre claims that Washington University should have contemplated this when drafting its Conduct Code and degree requirements.  Doc. 20 at p. 8.  But Washington University allows students to file a complaint under the Conduct Code against another student "as long as the respondent is a current student . . . and has not graduated."  Doc. 31-4 at p. 5.  Neither the Conduct Code nor Board procedures require that the University investigate the complaint before graduation to sanction the accused.  *See generally* Docs. 31-4, 31-5.  One possible sanction is expulsion, and the Conduct Code notes that expulsion "will be permanently noted on a student's official transcript."  Doc. 31-4 at p. 21.  Thus, the relevant question is not whether the accused completed the degree requirements before expulsion, but whether he or she was a student at the time the accuser filed the complaint.  *Id.* at p. 5.  If the accused was a student at the time of the complaint, then the university may sanction him or her accordingly.  Doc. 31-4 at pp. 5, 20–21. Here, the accuser filed a complaint against Lefebvre while he was a student and Washington University found that Lefebvre violated the Conduct Code, choosing to expel him as a result. *See* Doc. 31 at ¶¶ 37, 82, 94.  By expelling Lefebvre, Washington University rightfully revoked his student status on the transcript, pursuant to its Conduct Code.  Doc. 31-4 at pp. 12, 20–21. Thus, even if a contract existed, Lefebvre fails to state a claim for a breach.  Because Lefebvre has not plausibly alleged a contract existed, nor any breach, the Court dismisses the breach-of-contract claim regarding degree requirements with prejudice.

#### b.      Breach of contract regarding fair procedures

Next, Lefebvre alleges that Washington University's Conduct Code and Board procedures created a contract, which it broke by using unfair procedures.  As discussed above, principles of claim preclusion do not preclude Lefebvre's new state-law claims he should have brought, but did not, in *Doe III*.

Courts do not treat "general promises about ethical standards" as identifiable contractual promises.  *Lucero*, 400 S.W.3d at *6–7 (citing *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 207 (S.D.N.Y. 1998)); *see also Ward v. New York Univ.*, No. 99 civ. 8733(RCC), 2000 WL 1448641 (S.D.N.Y. Sept. 28, 2000) (finding vague promises regarding ethical treatment of students more akin to "general statements of policy" than identifiable contractual promises).  The alleged promises must be specific and discrete.  *Id*. at *7.  The *Lucero* court worried that the provisions cited, such as that "[the university] is committed to providing a positive work and learning environment where all individuals are treated fairly and with respect," *id.* at *5, did "not represent objective or quantifiable promises made by respondent."  *Id.*

The broad statements that Conduct Code proceedings "shall be informal, fair, and expeditious," and that the Board "will conduct a thorough, reliable and impartial investigation of complaints," are likely not specific enough to constitute discrete, identifiable contractual promises.  Lefebvre argues that Washington University's use of the terms "shall" and "will" constitutes express contractual promises.  However, in doing so, he fails to point to any caselaw—Missouri or otherwise—supporting this proposition.  Nor does he address how the terms are "objective" or "quantifiable."  *Id.*  Lefebvre tries to quantify these terms as requiring formal due process, Doc. 31 at ¶ 27, but the Conduct Code expressly eschews formal rules of procedure and evidence, Doc. 31-4 at pp. 4–5.  Viewing the University's Conduct Code and

Board procedures, the Court finds that the statements are more akin to "general promises about ethical standards" than identifiable contractual promises. *See Lucero*, 400 S.W. 3d at *6–7.

Similarly, Missouri courts hesitate to recognize a valid breach-of-contract claim where it would "embroil themselves in overseeing the day-to-day operations of schools." *Id.* at *9 (citing *Dallas Airmotive, Inc. v. FlightSafety Int'l, Inc.*, 277 S.W.3d 696, 700 (Mo. Ct. App. 2008)). When the university in *Lucero* stated that the procedures "will be expected to characterize the monitoring of Faculty responsibility," the Court found no breach of contract. *Id.* The *Lucero* court expressed concern that "intervention by the court would amount to judicial supervision of a university's internal procedures. . . ." *Id.* at 8 ("The claim, whether identified as one for breach of contract as Appellant argues, or perhaps more accurately as one sounding in tort, 'raises questions concerning the reasonableness of the educator's conduct in providing educational services' and, as such, 'is one of educational malpractice,' which Missouri courts have recognized as a non-cognizable claim."); *see also Hughes*, 2021 WL 2042264, at *13 (holding, at summary judgment, that no breach of contract existed where the university policy stated sexual harassment complaints "will be promptly, thoroughly, and impartially investigated," because it improperly "requests this Court to supervise [the University's] internal procedures for monitoring and disciplining its students."). Further, universities may typically modify these procedures without student approval, keeping these "outside the realm of [an] enforceable contract." *Doe v. Washington Univ.*, 2022 WL 424901, at *5. A policy that the policymaker can unilaterally amend rather strongly indicates that the policy is just that—a policy—not a contract.

Even though Washington University uses the terms "shall" and "will" when describing its procedures for Conduct Code and Board proceedings, the university's policies do not amount to a contractual promise. Lefebvre essentially asks the Court to supervise Washington University's

internal procedures—which courts consistently refuse to do.  *Lucero*, 400 S.W.3d at 8; *Hughes*, 2021 WL 2042264, at *13.  In both *Lucero* and *Hughes*, the universities used similar mandatory language, and in both the Court held that such provisions "cannot form the basis for her breach of contract claim." *Hughes*, 2021 WL 2042264, at *13.  Further supporting that these codes do not constitute a contract, Washington University may deviate from its own policies and change them without student approval.  Doc. 31-4 at p. 5.  Thus, Lefebvre cannot plausibly allege a breach-of-contract claim under Missouri Law, and the Court dismisses this claim with prejudice.

### 2.    Promissory estoppel

Previously, Lefebvre previously brought a claim for promissory estoppel, which the Court dismissed for failure to allege a definite, contractual promise, and that Lefebvre failed to plausibly allege that his reliance on any alleged promise was reasonable.  *Doe III*, 2021 WL 4504387, at *8.  Lefebvre now also alleges that the Conduct Code language regarding fair disciplinary procedures makes promissory estoppel proper.  Doc. 31 at ¶ 91.

"A claim of promissory estoppel has four elements: (1) a promise; (2) on which a party relies to his or her detriment; (3) in a way the promisor expected or should have expected; and (4) resulting in an injustice that only enforcement of the promise could cure." *Clevenger v. Oliver Ins. Agency, Inc.*, 237 S.W.3d 588, 590 (Mo. 2007) (citation omitted); *see also Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 440 (8th Cir. 2013).  "[P]romissory estoppel is not a favorite of the law, and each element must clearly appear and be proven by the party seeking its enforcement." *Glenn v. HealthLink HMO, Inc.*, 360 S.W.3d 866, 877 (Mo. Ct. App. 2012) (internal quotations omitted), *quoted in Park Irmat*, 911 F.3d at 515.  Relief under this claim is appropriate "only in extreme cases to avoid unjust results." *Kearney Com. Bank v. Popejoy*, 119 S.W.3d 143, 146 (Mo. Ct. App. 2003) (internal quotations and citation omitted).

15

First, the promise must be definite, and made in a contractual sense.  *Clevenger*, 237 S.W.3d at

590 (citation omitted); *see also Freitas*, 703 F.3d at 440 ("In Missouri, it is required that a

promise be as definite and delineated as an offer under contract law." (citation omitted)).

The promises that Lefebvre alleges here lack sufficient definiteness to state a claim.

Lefebvre claims that Washington University made promises to him that he would "receive a

degree after completing of the Degree requirements with academic integrity," Doc. 31 at ¶ 90,

and that "if he was accused of a violation of the [Conduct Code], he would not be sanctioned

without a fair disciplinary procedure, an impartial investigation and equitable resolution," *id* at

¶ 91.  However, the Court has already found that Lefebvre's allegations of these "promises" fail

to state a breach-of-contract claim and thus cannot form the basis of a promissory-estoppel

claim.  *See Doe III*, 2021 WL 4504387, at *8 (citing *Clevenger*, 237 S.W.3d at 590).

Repackaging them here does not resuscitate them, and the Court dismisses Lefebvre's

promissory-estoppel claim with prejudice.

### 3.    Unjust enrichment

Previously, Lefebvre filed a nearly identical claim for unjust enrichment and the Court

dismissed the claim, holding that it lacked "allegations supporting that Washington University

promised him a degree in exchange for tuition."  *Doe III*, 2021 WL 4504387. at *9.  To state a

claim for unjust enrichment, Lefebvre must plead facts to show: (1) Washington University was

enriched by the receipt of a benefit; (2) the enrichment was at his expense; and (3) it would be

unjust to allow Washington University to retain the benefit.  *Exec. Bd. of Mo. Baptist Convention

v. Windermere Baptist Conf. Ctr.*, 280 S.W.3d 678, 697 (Mo. Ct. App. 2009) (citation omitted).

"The third element, unjust retention of the benefit, is considered the most significant and the

most difficult of the elements."  *Id.* (citation omitted).  "Mere receipt of benefits is not enough,

16

absent a showing that it would be unjust for the defendant to retain the benefit." *Id.* Importantly, "courts throughout the country have consistently denied similar unjust enrichment claims when a student paid tuition and received instruction in return." *Doe III*, 2021 WL 4504387, at *9 (collecting cases).

Here, Lefebvre did not add facts that would cure his previous deficiencies. Lefebvre adds no allegations that Washington University promised him a degree in exchange for tuition. He does point to Washington University's website, which states, "[t]here are no boundaries to what you can achieve with a degree from Arts & Sciences." Doc. 31 at ¶ 11. But this advertisement fails to show entitlement to a degree. Without showing such promise, Lefebvre cannot show that Washington University has been unjustly enriched by retaining Lefebvre's tuition payments. *See Doe III*, 2021 WL 4504387, at *9. Accordingly, Lefebvre fails to state a claim for unjust enrichment and the Court dismisses this claim with prejudice.

### C.      Motion for leave to amend—fraudulent-misrepresentation claims

Lefebvre seeks to add a claim of fraudulent misrepresentation regarding the degree requirements and the fair disciplinary procedures. Doc. 33-1 at ¶¶ 103–126. "Under Missouri law, to state a claim for fraudulent misrepresentation, a plaintiff must plead: '(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury.'" *Soueidan v. Saint Louis Univ.*, No. 4:17-cv-2777-RLW, 2018 WL 1997287, at *4 (E.D. Mo. April 27, 2018) (citing *Arthur v.*

*Medtronic, Inc.*, 123 F. Supp. 3d 1145, 1149 (E.D. Mo. 2015)); *see also Renaissance Leasing,*

*LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 131–32 (Mo. 2010).

Additionally, "[i]n alleging fraud or mistake, a party must state with particularity the

circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  "In other words, the

complaint must plead the 'who, what, where, when and how' of the alleged fraud."  *Mt. Hawley*

*Ins. Co. v. City of Richmond Heights, Mo.*, No. 4:20-cv-1587-SEP, 2022 WL 767069, at *7 (E.D.

Mo. March 14, 2022) (quoting *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009)).

Typically, when specifically alleging the "who," parties must clarify which individual—not

corporate entity—made the declaration.  *Id*.

Here, Lefebvre alleges that Washington University represented that "he would obtain a

degree upon completion of the Degree Requirements," Doc. 33-1 at ¶ 103, and that "he would

receive a fair disciplinary procedure prior to being sanctioned for alleged conduct code

violations," Doc. 33-1 at ¶ 120.  For both allegations, Lefebvre names Washington University as

a whole, without identifying any specific representative who allegedly made these

representations.  Lefebvre could argue that his counselor made the representation that he would

receive his degree in their meeting, Doc 33-1 at ¶ 14, but even then, the Court previously held

that the counselor's statement only "merely informed Lefebvre that his proposed course load

would make him eligible to graduate."  *Doe III*, 2021 WL 4504387, at *6.  However, the Court

need not decide if Lefebvre pleaded the claims particularly enough because these claims fail for

other reasons addressed below.

Further, while courts typically prohibit a party from bringing a fraud claim with a breach-

of-contract claim, such prohibition generally only applies when a contract governs the

relationship.  Washington University cites many cases to support its claim that a party cannot

18

bring a claim on both a breach-of-contract theory and a fraud theory.  Doc. 16 at p. 8.  But the reasoning that "the mere failure to perform on a contract cannot serve as the basis of tort liability unless the breach itself is an independent tort[]" does not apply here.  *Ryann Spencer Grp., Inc. v. Assurance Co. of Am.*, 275 S.W.3d 284, 290 (Mo. Ct. App. 2008).  As discussed, no legally enforceable contract existed for Washington University to fail to perform.  Thus, Lefebvre may plead in the alternative that Washington University fraudulently misrepresented its degree requirements and disciplinary procedures.  The Court now considers whether these alternative allegations state a claim.

### 1.    Fraudulent misrepresentation regarding degree requirements

To state a claim for fraudulent representation, the hearer must allege facts to show that they did not know of the falsity of the speaker's representation.  *Soueidan*, 2018 WL 1997287, at *4.  However, courts hesitate to maintain a fraud claim if a party "neglects means of information easily discoverable."  *Eagle v. Swanger*, 787 S.W.2d 806, 810 (Mo. Ct. App. 1990) (holding that, in arms-length transactions, the party neglecting easily discoverable information should bear the risk of such neglect); *see also Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 765 (Mo. 2007) (holding that a seller is not required to disclose information that the buyer could find through "ordinary diligence")

Lefebvre claims that Washington University "failed to tell [him] there were other un-written degree requirements [aside from the Degree Requirements] prior to accepting his tuition money for 126 course credits."  Doc. 33-1 at ¶¶ 104, 106.  But posting degree requirements online is not a representation alone.  Nor does it give Lefebvre, or other students, the right to ignore academic and student-conduct requirements.  Lefebvre himself states that he relied on the Conduct Code procedures, Doc. 33-1 at ¶ 122, implying he was aware of the school's allegedly

"un-written" degree requirements, Doc. 33-1 at ¶ 106.  Specifically, Washington University clearly stated expulsion—permanent removal from student status—as a potential consequence for student-conduct violations and that it would notate such consequence on the transcript.  Doc. 31-4 at p. 21.  Even though Washington University never explicitly "told [Lefebvre] that it would not give him a degree if he was convicted of conduct code violation [sic]," Doc. 33-1 at ¶ 111, it made the threat of expulsion publicly available through the Conduct Code, Doc. 31-4.  Thus, Lefebvre fails to allege that Washington University made false representations.  That he alleges an omission does not fare any better, as he does not plead that he exercised due diligence to discover the allegedly omitted Conduct Code information.  *In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*, 966 F. Supp. 1525, 1535 (E.D. Mo. June 11, 1997).  The Court finds that this proposed amendment fails for futility.

### 2.    Fraudulent misrepresentation regarding fairness procedures

Lefebvre states that he "justifiably believed that [Washington University] was entitled to give him due process prior to expelling him, whereas [Washington University] knew it was not subject to the due process requirements in the Constitution and never told [Lefebvre] this fact prior to collecting his tuition for the 126 credit units he completed."  Doc. 33-1 at ¶ 124.  But Lefebvre admits that Washington University only represents that students would "receive a fair disciplinary procedure."  *Id.* at ¶ 120.  Thus, Lefebvre pleads himself out of a claim in acknowledging that Washington University never agreed to provide due process.  To the contrary, the written guidelines state that formal procedures do not apply to Conduct Code or Board proceedings.  *See* Doc. 31-4 at pp. 4–5 ("Procedures governing criminal or civil courts, including formal rules of evidence, are not applicable."); Doc. 31-5 at p. 3 ("Criminal or civil

rules of procedure applicable in a court proceeding, including formal rules of evidence, are not applicable to [Board] proceedings.").

Washington University laid out its procedures in its Conduct Code and Lefebvre does not allege that it violated specific procedures, only that the overall process was not fair.  However, he equates his fairness to the requirements of due process, but those requirements do not apply.  *See Doe I*, 434 F. Supp. 3d at 749–50 (collecting cases).  Lefebvre does not complain about a specific procedure of the Conduct Code, but only attempts to rewrite its language to match his understanding.  Thus, Washington University never falsely represented a procedure, and Lefebvre cannot plausibly allege a claim for fraudulent misrepresentation regarding the disciplinary procedures.  Finding this claim futile, the Court denies Lefebvre's motion for leave to amend.

## V.    Conclusion

Accordingly, the Court denies Lefebvre's [33] Motion to Amend on futility grounds and grants Washington University's [8] Motion to Dismiss. The Court enters a separate order dismissing this case with prejudice.

So Ordered this 17th day of April 2023.

STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE